```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
———————————————————————————

ERICA LOTTBREIN,

                         Plaintiff,

      -vs-                             **No. 1:13-CV-01096 (MAT)**
                                                 **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

———————————————————————————

**I.   Introduction**

Represented by counsel, Erica Lottbrein ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**II.   Procedural History**

The record reveals that in February 2011, plaintiff (d/o/b January 6, 1973) applied for DIB, alleging disability as of January 2010. After her application was denied, plaintiff requested a

hearing, which was held before administrative law judge Robert T. Harvey ("the ALJ") on May 31, 2012. The ALJ issued an unfavorable decision on August 16, 2012. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of the Record

The record reveals that plaintiff suffered from work-related back injuries, which she reported resulted from the "cumulative, repetitive trauma" of her past work as a fire and water restoration worker. That work involved regular lifting of approximately 80 to 90 boxes per day, weighing 50 to 100 pounds each. As a result, plaintiff suffered back pain, which is the chief complaint noted throughout her medical record. Her medical record also indicates diagnoses of polyarthralgia[1] or fibromyalgia, for which she treated primarily with rheumatologist Dr. Danillo Saldana. On multiple occasions, Dr. Saldana noted trigger point tenderness of plaintiff's upper neck, upper back, upper chest, lower back, elbows, hips, and knees. Plaintiff also treated with Drs. Bernard Beaupin, Carl Roth, and Thomas McTernan, primarily for back pain.

The record contains records of mental health treatment, primarily with licensed mental health counselor Valerie Nowak, at Community Concern Mental Health Clinic. Plaintiff treated there from approximately February through August 2010, after which point

---

[1] Polyarthralgia is defined as aches in the joints, joint pains, arthralgia of multiple joints, and multiple joint pain. Polyarthritis is the word usually used to describe pain affecting five or more joints.

she ceased appearing for appointments (citing lack of transportation and/or insurance) and was eventually terminated from the program. During her visits, plaintiff reported ongoing issues with anxiety and panic attacks, and she was diagnosed with panic disorder. Where the records note mental status examinations, those examinations were normal with the exception of anxious or depressed mood. None of plaintiff's treating psychiatric sources completed a functional assessment.

On May 19, 2011, psychologist Dr. Rachel Hill performed a consulting psychiatric evaluation at the request of the state agency. Mental status examination was essentially normal. Dr. Hill opined that plaintiff could perform simple and complex tasks, and that she could relate adequately with others and appropriately handle stress. According to Dr. Hill, plaintiff's psychiatric problems did not "interfere[] with her ability to function as much as her physical problems [did]." T. 373.

Also on May 19, 2011, Dr. Nikita Dave performed a consulting internal medicine examination at the request of the state agency. Dr. Dave noted loss of lordosis in the lumbar spine and slight tenderness at the midline of L1, but otherwise an essentially normal physical examination. According to Dr. Dave, plaintiff had mild to moderate limitations for sitting, standing, walking, bending, twisting through the lumbar spine, lifting, carrying,

pushing, and pulling; and plaintiff should avoid working in cold environments due to Raynaud's disease.

Various treating providers also provided functional assessments of plaintiff. Dr. Beaupin, who completed updates for workers compensation purposes, opined that plaintiff should avoid bending, stooping, reaching, twisting, crawling, or climbing; should not lift anything greater than 20 pounds; and should avoid sitting, standing, or walking for more than two hours at a time without a break. See T. 275 (October 22, 2010); 277 (May 27, 2010). Dr. Cameron Huckell provided an identical assessment on May 27, 2010. On March 9, 2011, Dr. Roth opined that plaintiff was moderately limited in walking, standing, climbing, and working at a consistent pace; and very limited in lifting, carrying, pushing, pulling, and bending. He stated that these limitations could be expected to last for four to six months. On May 29, 2012, Dr. McTernan opined that plaintiff was limited to lifting and carrying 20 pounds occasionally and ten pounds frequently; could stand or walk for less than two hours per workday; could sit for less than six hours per workday and only one-half hour at a time; and could push/pull up to ten to twenty pounds. He opined that she "must be constantly changing positions throughout the course of an [eight] hour workday." T. 381.

**IV.   The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 10, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the severe impairments of back pain and Raynaud's disease. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to occasionally lift/carry up to 20 pounds and frequently lift/carry ten pounds; stand and/or walk for six hours in an eight-hour workday; sit two hours in an eight-hour workday; plaintiff had "occasional limitations in bending, climbing, stooping, squatting, kneeling, and crawling" and occasional limitations in pushing and pulling with the upper extremities; and plaintiff could not work in areas where she would be exposed to cold. The ALJ found that plaintiff retained the ability to perform the basic mental demands of unskilled work, including: understanding, remembering, and carrying out simple instructions; responding appropriately to supervision,

coworkers and usual work situations; and dealing with changes in a normal work setting.

At step four, the ALJ found that plaintiff was capable of performing past relevant work as a housekeeper, as she actually performed it. Accordingly, the ALJ did not proceed to step five and determined that plaintiff was not disabled.

**V.   Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A.   Step Two Finding**

Plaintiff contends that the ALJ erred in finding, at step two of the sequential analysis, that her fibromyalgia, bilateral foot pain, limitations in the use of her hands, and psychiatric diagnoses were nonsevere impairments. Although Dr. McTernan noted on one occasion that plaintiff suffered from edema of the hands and feet, objective findings of hand and foot impairments in the record is sparse, and the Court thus finds that the ALJ did not err in finding these impairments nonsevere. However, Dr. Saldana's treatment notes indicated that he diagnosed plaintiff with polyarthralgia, a condition closely associated with fibromyalgia.

6

Dr. Saldana's notes indicated that plaintiff was positive for trigger point tenderness in the upper neck, upper back, upper chest, lower back, elbows, hips, and knees. Dr. Roth also noted that plaintiff had trigger point tenderness in her back, hips, and shoulders. Treatment notes from other providers consistently noted plaintiff's diagnosis of fibromyalgia.

The ALJ found that plaintiff's fibromyalgia was not a severe impairment, reasoning briefly that there was "no persuasive evidence that [it was a] severe impairment[]." T. 17. The Court disagrees. The repeated reference to plaintiff's fibromyalgia throughout the record, Dr. Saldana's findings of trigger point tenderness, and notes from other treating providers that plaintiff was following up in treatment for fibromyalgia symptoms with Dr. Saldana, indicate that this condition was a severe impairment. The ALJ's conclusory determination that it was a nonsevere impairment, combined with his failure to consider the effects of plaintiff's fibromyalgia on her overall functional capacity, constituted reversible error. See Casselbury v. Colvin, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015) ("[The ALJ's failed to] consider the potential functional limitations as a result of Plaintiff's fibromyalgia symptoms after discounting Plaintiff's fibromyalgia as a medically determinable impairment, and accordingly, remand is warranted.").

The ALJ also erred in finding plaintiff's mental impairments nonsevere at step two. However, unlike with the analysis of plaintiff's fibromyalgia, the ALJ's decision indicates that

7

plaintiff's mental health records and diagnoses were fully considered prior to the ALJ coming to an RFC determination. "As a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless . . . when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process." Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (internal quotation marks and citations omitted). The Court thus finds the ALJ's step two error regarding plaintiff's mental impairments to be harmless.

On remand, the ALJ is directed to reconsider plaintiff's diagnosis of polyarthralgia/fibromyalgia. The ALJ is directed to specifically explain how the functional limitations contained within the RFC finding are supported by the evidence, in a function-by-function assessment as required by the regulations, see 20 C.F.R. § 404.1545, "with the understanding that fibromyalgia does not always result in objective findings or diagnostic tests." Mnich v. Colvin, 2015 WL 7769236, *19 (N.D.N.Y. Sept. 8, 2015), report and recommendation adopted, 2015 WL 7776924 (N.D.N.Y. Dec. 2, 2015) (remanding for compliance with SSR 12-2p, noting that "fibromyalgia does not always result in objective findings or diagnostic tests").

### B. Weight Given to Medical Opinions

Plaintiff contends that the ALJ failed to give good reasons for rejecting Dr. McTernan's treating opinion. The ALJ gave Dr. McTernan's opinion little weight, finding that it was

8

inconsistent with other substantial record evidence, including Dr. McTernan's own treatment notes. Initially, the Court notes that the ALJ's ultimate RFC determination, which accounted for occasional postural limitations and lifting/carrying restrictions of 20 pounds occasionally and ten pounds frequently, was partially consistent with Dr. McTernan's similar opinions as to those functions. The ALJ's decision to give less weight to the remainder of Dr. McTernan's opinion was supported by substantial record evidence, including Dr. McTernan's own treatment notes which reflected largely normal physical examinations. See T. 383, 386, 392. The ALJ was within his discretion to accept certain portions of Dr. McTernan's opinion, but reject those that were not supported by his own treatment notes or other substantial record evidence. See Pavia v. Colvin, 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (noting that it is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report") (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

Plaintiff further argues that the ALJ in giving Dr. Hill's consulting psychiatric opinion significant weight. Plaintiff contends that her mental health treatment notes substantially contradicted the functional assessment contained in Dr. Hill's opinion. The Court disagrees. Although plaintiff reported symptoms of anxiety and panic attacks to her mental health treating sources, mental status examinations from those sources were essentially normal. Moreover, no mental health treating source provided a

9

functional assessment contradicting Dr. Hill's opinion that plaintiff could perform simple and complex tasks, adequately relate with others, and appropriately handle normal work stress. The record supports Dr. Hill's conclusion that plaintiff's chief limitations were physical, not mental, in nature. Therefore, the ALJ did not err in giving significant weight to Dr. Hill's consulting opinion. See Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.") (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam)).

### C. Step Four Finding

Plaintiff contends that the ALJ erred in determining that she could perform her past relevant work. In light of the Court's decision to remand this case for further consideration regarding plaintiff's impairment of fibromyalgia, the Court declines to reach the issue of whether the ALJ erred at step four of the determination. On remand, after a reconsideration of the effect of plaintiff's fibromyalgia on her RFC, the ALJ must then reconsider whether plaintiff can perform past relevant work. In accordance with SSR 86-8 and 20 C.F.R. § 404.1520, the ALJ should consider whether, given plaintiff's RFC, plaintiff "can do past relevant work . . ., and if not, whether . . . she can reasonably be expected to make a vocational adjustment to other work." SSR 86-8p.

## VI. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 13) is denied and plaintiff's

motion (Doc. 10) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   August 30, 2016
         Rochester, New York.